## In re LATHAM LITHOGRAPHIC CORPORATION.
### No. 52.

Circuit Court of Appeals, Second Circuit.
Nov. 27, 1939.

Brodsky & Stone, of New York City (Irving Brodsky, of New York City, of counsel), for appellant.

Weil & Fenster, of New York City, (Frederick Fenster, of New York City, of counsel), for creditor-appellee.

Duberstein & Schwartz, of Brooklyn, N. Y., (Samuel C. Duberstein and Max Schwartz, both of Brooklyn, N. Y., of counsel), for appellees.

Before SWAN, CHASE, and CLARK, Circuit Judges.

SWAN, Circuit Judge.

This appeal brings up a contest between two creditors over the election of a trustee of the bankrupt Latham Lithographic Corporation. The referee allowed the appellant Fisher to vote his claim, with the result that no nominee for the office of trustee had a majority in number and amount of the voted claims. The referee then appointed Samuel Rabin as trustee. Upon the petition of Bulkley, Dunton & Co., a creditor, the district court reversed the referee's order and adjudged Arthur S. Burton to have been elected trustee.

The correctness of the order appealed from turns on whether the appellant Fisher was entitled to vote. If he was, then no election was had and the referee's appointment of Rabin should have been confirmed; if he was not entitled to vote, the order of the district court was right. Fisher's alleged disqualification is rested on section 44 of the Bankruptcy Act as amended in 1938, 11 U.S.C.A. § 72, but before passing to a consideration of the meaning of that section, it is necessary to state the facts regarding the origin of his claim.

Prior to February 7, 1938 one Stein held two chattel mortgages made by predecessors of the bankrupt and covering all of its machinery and equipment. On that date the bankrupt gave to Gugler Lithographic Company (for brevity referred to hereafter as Gugler) another chattel mortgage upon the same personal property. By agreement of the same date between the bankrupt, Gugler, Stein and Stein as trustee, these three mortgages, securing an aggregate indebtedness of nearly $200,000, were in effect consolidated; the mortgagees assigned their respective mortgages to Stein as trustee and the bankrupt was to deliver to the trustee notes, payable to the order of the trustee, representing the consolidated debt and providing for payment of weekly instalments. Subsequently, in April 1938, the bankrupt executed another chattel mortgage of $5,000 to Kempland covering the same personal property, and by a further contract that mortgage was also brought under the consolidation agree-

ment of February 7th. On October 11, 1938 Stein sold to Gugler his beneficial interest in the four chattel mortgages and the indebtedness secured thereby, and Stein as trustee agreed to give notice that the mortgages would be foreclosed by sale on October 24, 1938 and agreed to make specified dispositions of the proceeds of sale. Two days later, on October 13th, Fisher agreed to purchase one half of Gugler's interest in the mortgages and the indebtedness they secured. Notice of foreclosure sale was given by Stein as trustee and the sale was had on October 24. Gugler bid in the mortgaged chattels for $100,000, leaving a deficiency of $101,259.30. Through stock ownership Gugler controlled the bankrupt and caused it on October 24 to execute a general assignment for the benefit of creditors. The involuntary petition in bankruptcy was filed November 2, 1938. Fisher filed a claim for $50,629.65, one half of the deficiency, and Gugler a claim for the other half. Under § 44 of the Act as amended Gugler's claim was not permitted to vote because of Gugler's ownership of stock of the bankrupt. Fisher was not a stockholder nor otherwise disqualified under § 44, unless the fact that his assignor was disqualified creates a disqualification in him.

In our opinion § 44 creates a personal disability only. If a creditor who would be disqualified to vote the claim in the debtor's bankruptcy assigns it in good faith to a purchaser who is not disqualified, we can see no reason to bar the latter from voting it. The purpose of the provision under discussion is to prevent the election of a trustee who may be too friendly to the bankrupt and fail to protect the interests of creditors. The amendment merely extends and makes mandatory a policy which the courts had sometimes enforced in the absence of express statutory direction. See In re L. W. Day & Co., 2 Cir., 178 F. 545; In re McGill, 6 Cir., 106 F. 57; In re Stowe, D.C.Cal., 235 F. 463. This statutory purpose will be adequately served if the declared disability is construed to be personal to the creditor, as the language appears to make it. Of course, the transfer must not be a mere subterfuge; the disqualified assignor must part with all interest in the claim assigned and put no restrictions on how the assignee is to vote it.

In the case at bar the problem is complicated by the fact that only part of the claim was assigned. The argument of

the appellant is that since a partial assignee may sue in his own name in the state courts,[1] he must also be entitled to file a proof of claim in bankruptcy and to vote upon it unless personally disqualified. On the other hand, the appellee argues that a single claim may not be split up so as to increase the number of the bankrupt's creditors and, since the assignor is disabled to vote, the partial assignee may not vote a part of the single claim. It is by no means clear that by a partial assignment of a single claim the number of the bankrupt's creditors may be increased. When the assignment is made for that purpose, the courts will not recognize it as effective to accomplish the purpose. Leighton v. Kennedy, 1 Cir., 129 F. 737; In re Tribelhorn, 2 Cir., 137 F. 3; Stroheim v. Lewis F. Perry & Whitney Co., 1 Cir., 175 F. 52; Emerine v. Tarault, 6 Cir., 219 F. 68. But none of the authorities cited by either party casts much light upon the effectiveness of a partial assignment to increase the number of creditors in the case of a bona fide sale prior to bankruptcy of the debtor. But even if such effect be assumed, the appellant in the case at bar encounters a further difficulty. The consolidation agreement of February 7th provided for assignment of the mortgages to Stein as trustee and for delivery of notes by the bankrupt payable to the order of the trustee for the aggregate amount of the mortgage indebtedness. While the agreed statement of facts does not definitely state that the notes were given as agreed, we think it may be assumed that this was done; in any event the chattel mortgages were assigned to Stein as trustee. Hence the bankrupt's indebtedness was to the trustee and Gugler's assignment to Fisher was an assignment by a cestui que trust of a part of the beneficial interest in a debt owing to the trustee. We are quite clear that such a partial assignment does not give the assignee a claim provable in his own name. The trust was not a mere dry trust, for the trustee had active duties in respect to collecting the indebtedness, foreclosing the mortgages by sale and distributing the proceeds. An action upon the notes would have had to be brought by the trustee. See Titus v. Wallick, 306 U.S. 282, 289, 59 S.Ct. 557, 83 L.Ed. 653. Even in equity the cestuis que trust could sue only if the trustee was unwilling or unable to act. See Robinson v. Adams, 179 N.Y. 558, 71 N.E. 1139, affirming 81 App.Div. 20, 80 N.Y.S. 1098; Hart v. Goadby, 138 App.Div. 160, 123 N.Y.S. 166; Ettlinger v. Persian Rug & Carpet Co., 142 N.Y. 189, 36 N.E. 1055, 40 Am.St.Rep. 587. It is true that the agreed statement of facts is silent as to the trustee's duties in respect to collecting the deficiency resulting from foreclosure of the chattel mortgages; but inasmuch as the notes were payable to his order and the mortgages had been assigned to him, it would seem that the deficiency was a debt owing by the bankrupt to the trustee and that he was the one to make proof of the claim and to vote it. See In re E. T. Kenney Co., D.C.Ind., 136 F. 451, 455; In re Veler, 6 Cir., 249 F. 633; Nebraska Mercantile Co. v. Nathanson Bros. Co., 8 Cir., 20 F.2d 330, 332; In re James Butler Grocery Co., D.C.N.Y., 21 F.Supp. 149, 150. There is nothing to show that the trustee was unable or unwilling to prove the claim for the benefit of his cestuis. Had that been shown, bankruptcy procedure being analogous to that in equity, it may well be that cestuis could then have proved in their own names; but even in that event we think the claim for the deficiency should be regarded as a single claim with a single vote rather than separate claims by the several beneficiaries in the amounts of their respective interests therein. See In re E. T. Kenney Co., supra. The appellant, having failed to establish a provable claim in his own name for half of the deficiency, was properly denied the right to vote. On that ground the order is affirmed.

[1] Porter v. Lane Construction Corp., 212 App.Div. 528, 209 N.Y.S. 54, affirmed 244 N.Y. 523, 155 N.E. 881; Grosner v. Abramson, 162 Misc. 731, 295 N.Y.S. 372.